UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY EAVES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1153-B |
| | § | |
| UNITED TECHNOLOGIES | § | |
| CORPORATION,[1] | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Carrier Corporation's Motion for Summary Judgment (Doc. 33). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion. The Court **GRANTS** Defendant's motion with respect to Plaintiff's age discrimination claim, but **DENIES** the motion with respect to Plaintiff's gender discrimination claim.

### I.
### INTRODUCTION

Defendant provides heating, air-conditioning, and refrigeration solutions. Doc. 34, Def.'s Mot., 3. Plaintiff had been employed by Defendant since March 1998, working on installation and maintenance of HVAC controls in commercial buildings. *Id.* He reported to Service Supervisor Amy Bell, who in turn reported to Area Operations Manager Stan Davis. *Id.*

---

[1] The parties agree that the wrong defendant was named; the correct defendant is Carrier Corporation. *See* Doc. 34, Def.'s Mot., 1 & n.1.

On March 26, 2018, a woman at a Kroger store reported that a man stated to her that he "like[s] to see a woman in knee pads," while also touching her lower back with his open palm. *Id.* at 5. The woman took a picture of the man's vehicle, which had one of Defendant's identification numbers on it. *Id.* at 6.

On April 4, 2018, the Arlington Police Department contacted Defendant's Dallas office concerning the driver of its vehicle No. 62037 on March 26, 2018. *Id.* at 4. The police officer on the call, Detective Odis Eddy Green, told Bell that he was inquiring into the Kroger incident. *Id.* He also informed Bell "that criminal charges would be filed once they could identity the culprit." *Id.*

Bell then passed this information on to Davis, who confirmed that Plaintiff was driving the vehicle on that date. *Id.* Davis told Plaintiff to call Detective Green. *Id.* Later that same day—April 4—Davis spoke to Detective Green, who told Davis that he had spoken with Plaintiff. *Id.* at 5. Detective Green explained to Davis that he would be charging Plaintiff with misdemeanor criminal assault. *Id.* Davis relayed this information to Mr. Lively, who was tasked with conducting an internal investigation of the incident. *Id.* Davis also informed Lively that Plaintiff had allegedly denied being at the Kroger store but recanted this denial once confronted with specifics of the incident. *Id.*

The following day, Davis notified Plaintiff that he would be suspended pending an internal investigation. *Id.* at 6. Plaintiff was already on medical leave when he received this notice. *Id.*

That same day, Lively began his internal investigation by speaking to Detective Green. *Id.* at 6. Plaintiff also spoke to Detective Green. *Id.* at 6–7. On May 18, Lively explained to Plaintiff that upon Plaintiff's return to work, they would be discussing the alleged Kroger incident. *Id.* at 7. On May 30, upon Plaintiff's return to work, Lively interviewed him over telephone, with Bell present. *Id.*

After this interview, Lively recommended to the Disciplinary Review Committee (DRC) that Plaintiff's employment should be terminated. *Id.* at 9. The DRC was composed of Lively, Leanne Simpson (HR Manager), Steven Morris (Labor Relations), and Chris Boccaccio (Legal). *Id.* at 10. Lively provided the case summary for the DRC meeting, which took place on June 5, 2018. *Id.* The DRC unanimously agreed on terminating Plaintiff's employment. *Id.* The following day, Defendant notified Plaintiff of its termination of his employment. *Id.*

On April 4, 2019, Plaintiff filed this lawsuit against Defendant, alleging that Defendant committed unlawful employment practices in violation of Texas Labor Code § 21.052, *et seq. See* Doc. 1, Notice of Removal, 1; Doc. 1-1, Original Pet., ¶ 16. Plaintiff asserts that "Defendant chose to fire [Plaintiff] because a female had accused him of 'sexual' misconduct," thus "taking sides based upon gender . . . ." Doc. 41, Pl.'s Reply, 1. Alternatively, Plaintiff claims that he "was replaced by someone substantially younger and has an age [discrimination] claim on an alternative basis." *Id.*

Defendant then removed the case to this Court on May 14, 2019. *See* Doc. 1, Notice of Removal. On May 11, 2020, Defendant filed a motion for summary judgment on Plaintiff's claims. Doc. 33, Def.'s Mot., 1. All briefing has been filed, and the motion is ripe for review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of

material fact exists. *Latimer v. Smithkline & Fr. Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations incorporated and quotation marks omitted). But the court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation and quotation marks omitted). If the non-movant is unable to make the required showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

### III.

### ANALYSIS

"Because one of the purposes of the TCHRA [Texas Commission on Human Rights Act][2] is 'to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,'" the Texas Supreme Court has "held that those analogous federal statutes and the cases interpreting them guide [its] reading of the TCHRA." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (citation omitted).

Thus, Texas courts apply the *McDonnell Douglas* framework to discrimination cases where appropriate. *Id.* at 634 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). In cases in which there is no direct evidence of discrimination, a plaintiff must first establish a prima facie case of discrimination. *Id.* (citing, *inter alia*, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). This burden "is not onerous." *Id.* (citing *Burdine*, 450 U.S. at 253).

If a plaintiff has established his prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory . . . reason for the challenged employment decision." *Dick v. J.B. Hunt Transport, Inc.*, 772 F. Supp. 2d 806, 816 (N.D. Tex. 2011) (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant does so, "the burden accordingly shifts back to the plaintiff to show such reason to be merely pretext for discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804–05).

Thus, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer

---

[2] Chapter 21 of the Texas Labor Code was previously known as the Texas Commission on Human Rights Act. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 437 (5th Cir. 2012).

unlawfully discriminated." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

In sum, the Court finds that genuine disputes of material fact prevent summary judgment on Plaintiff's gender discrimination claim; however, Plaintiff has not shown a genuine dispute of material fact as to his age discrimination claim. Therefore, that claim must be dismissed.[3]

A.   *Gender Discrimination Claim*

The Court holds that there are factual disputes that preclude summary judgment on this claim.

   1.   Prima Facie Case

When, like here, a plaintiff attempts to prove "a discrimination case based on circumstantial evidence, . . . the plaintiff must first establish a prima facie case." *Tex. Dep't of Aging & Disability Servs. v. Loya*, 491 S.W.3d 920, 924 (Tex. App.—El Paso 2016, no pet.) (citation omitted). The elements of a prima facie case for gender discrimination are: "(1) [the plaintiff] is a member of a protected class; (2) [the plaintiff] was qualified for [his] position; (3) [the plaintiff] was terminated; and (4) [the plaintiff] was treated less favorably than similarly situated members of the opposing class." *Id.* (citing *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam)). A plaintiff can satisfy this fourth element by showing that he was: (a) "replaced with a similarly

---

[3] Defendant argues that summary judgment should be granted because Plaintiff "fails to identify facts in the record about which a genuine issue of material fact exists." Doc. 43, Def.'s Reply, 1. Defendant cites to *Evanston Insurance Company v. Consolidated Salvage, Inc.*, 2018 WL 5980496, at *2 (N.D. Tex. Nov. 14, 2018), in support of this argument. *See* Doc. 43, Def.'s Reply, 1. But in *Evanston*, the non-movant's response was "unsworn, it submit[tted] no materials in an appendix, and it fail[ed] to cite any materials in [the movant's] appendix." 2018 WL 5980496, at *2. Here, however, Plaintiff has his own robust appendix, *see* Doc. 42, and spends the first fifteen pages of his response discussing his version of the facts. *See* Doc. 41, Pl.'s Resp., 1–15. Defendant's motion for summary judgment on this ground is therefore **DENIED**.

qualified [female]," (b) "treated less favorably than [females] who were similarly situated, or" (c) "otherwise discharged due to [his] gender." *Id.* (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)).

At issue is the third way to prove the fourth element— "otherwise discharged due to [his] gender." *Id.* (citing *Rachid*, 376 F.3d at 309). Plaintiff alleges that "[f]rom the very beginning and throughout the alleged 'investigation,' it was clear that assumptions were made against [Plaintiff] because the allegations came from a woman." Doc. 41, Pl.'s Br., 17. Defendant does not dispute elements one through three of the prima facie case. *See generally* Doc. 34, Def.'s Mot.

However, Defendant argues that Plaintiff does not establish the fourth element of the prima facie case. First, Defendant asserts that Plaintiff's argument—that believing the accuser over Plaintiff because the accuser is a woman and Plaintiff a man constitutes gender discrimination—is "legally flawed[.]" Doc. 34, Def.'s Mot., 16. Defendant points to *Doe v. Colgate University*, 760 F. App'x 22 (2d Cir. 2019) (per curiam), in which the Second Circuit explained that "by believing each complainant rather than John Doe, the [school] panel effectively decided that sexual misconduct was more likely to have occurred than not, because each complainant indicated misconduct had occurred that John Doe denied." Doc. 34, Def.'s Mot., 15.

First, the Court does not find Plaintiff's argument legally insufficient. The context of the *Doe* court's explanation is important: the court was responding to the appellant's assertion that bias was demonstrated by the fact that the school panel "said that it had found the complainants more credible than it had found him, rather than finding that the charges were proven by a preponderance of the evidence." *Doe*, 760 F. App'x at *33. The court explained that "[t]his d[id] not demonstrate bias . . . ." *Id.* Moreover, the court explained that it could be, in other circumstances, "plausible to

-7-

infer" bias when a decisionmaker believes one side over the other. *See id.* Thus, *Doe*, even as persuasive authority, does not foreclose Plaintiff's argument from a legal standpoint. To terminate employment by believing one side of the story solely based on that person's gender would be to "otherwise discharge[]" someone "due to [his] gender." *Loya*, 491 S.W.3d at 924 (citing *Rachid*, 376 F.3d at 309); *see Brock-Chapman v. Nat'l Care Network, L.L.C.*, 2013 WL 169177, at *12 (N.D. Tex. Jan. 16, 2013) (rejecting the defendant's claim that the plaintiff could not make out a prima facie case of gender discrimination when she could not "compare herself to a similarly situated male," because a "plaintiff may meet the fourth prong of the prima facie case by demonstrating she was otherwise discharged because of her sex") (citing *Lawson v. Southern Components, Inc.*, 410 F. App'x 833, 835 (5th Cir. 2011) (per curiam)).[4]

Moreover, the Court finds that there is a genuine dispute of material fact as to whether Plaintiff was "otherwise discharged due to [his] gender." *Id.* (citing *Rachid*, 376 F.3d at 309).

On April 5, 2018, before Lively began his internal investigation, Davis emailed Lively explaining that, "[i]n our opinion [Plaintiff] should be immediately released from employment with Carrier because of this incident." Doc. 42, Pl.'s App., 149. Although the rest of the email does explain certain reasons for this conclusion—such as Davis's belief that Plaintiff's "actions and representation of [Defendant] do not meet the requirements of [its] code of conduct, ethics, and integrity," *see id.*—Lively's deposition suggests he interpreted Davis's email as saying that Davis believed Plaintiff's accuser merely because of her allegation:

---

[4] The court in *Brock-Chapman* explained that the a plaintiff, at the prima facie stage, must only "provide evidence from which 'a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" 2013 WL 169177, at *12 (quoting *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575 (5th Cir. 2003)).

> Q: Well, what did Mr. Davis tell you?
>
> A: I think, if I recall correctly, Mr. Davis pretty much said, you know, this should be enough for termination?
>
> Q: Just the allegation alone should be enough?
>
> A: Yes. And, as I said, that unfortunately is consistent with how I encounter other situations like that which is why they don't have the authority to make that decision.

*Id.*, Lively Dep., 147: 11–19.

Thus, there is evidence that suggests that Lively believed Davis credited the accuser merely because of her accusation. And because the accuser was a female and Plaintiff a male, a reasonable juror could conclude that Davis took the accuser's side due to the gender of the accuser and Plaintiff.

Importantly, there is also evidence which suggests that Davis could have had influence over Lively:

> Q: Basically, Stan Davis is saying we want to fire [Plaintiff] will you investigate so we can do that.
>
> A: Yep. I would say this is pretty consistent speak with what I see, not just in email but on the phone from other managers, not just with respect to Carrier, anywhere. It just is what it is.

*Id.*, Lively Dep., 145: 19–24.

Therefore, there is evidence which suggests that Davis's predisposition to believe Plaintiff's accuser, perhaps because she is female and Plaintiff is a male, had an influence on Lively, who made the ultimate recommendation to the DRC to terminate Plaintiff—which it ultimately did. *See* Doc. 34, Def.'s Br., 9–10. The Court concludes that there is a genuine dispute of material fact as to whether Plaintiff was "otherwise discharged due to [his] gender." *Loya*, 491 S.W.3d at 924 (citing *Rachid*, 376 F.3d at 309).

To be sure, there is weighty evidence which suggests that Lively had other, nondiscriminatory reasons for recommending that Plaintiff's employment with Defendant be terminated. *See* Doc. 34, Def.'s Mot., 8–9 (describing Lively's findings and conclusions); *id.* at 16 (describing Lively's deposition). However, "the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted).

Therefore, the Court concludes that there is a genuine dispute of material fact as to whether Plaintiff has satisfied his prima facie case, especially in light of the fact that Plaintiff's burden on this step of the *McDonnell Douglas* framework "is not onerous." *Garcia*, 372 S.W.3d at 634 (citing *Burdine*, 450 U.S. at 253).

2. Pretextual Investigation

Next, the Court also concludes that there is a genuine issue of material fact as to whether Defendant's internal investigation was pretextual.

After a plaintiff sets out a prima facie case of discrimination, a defendant must provide "a legitimate, non-discriminatory reason" for the questioned action. *Wittmer v. Phillips 66 Co.*, 304 F. Supp. 3d 627, 633 (S.D. Tex. 2018) (citing *McDonnell Douglas*, 411 U.S. at 802). Here, Plaintiff doesn't dispute not that Defendant provided such a reason, *see* Doc. 41, Pl.'s Resp., 18–19, which is that Defendant's investigation revealed that Plaintiff most likely engaged in sexual misconduct. Doc. 34, Def.'s Mot., 17.

Because Defendant "show[ed] a legitimate, non-discriminatory reason, the presumption of discrimination disappears," and Plaintiff must "show that the proffered reason was a pretext for discrimination or that the employee's protected status is another motivating factor for the decision."

*Wittmer*, 304 F. Supp. 3d at 633 (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 736–37 (S.D. Tex. 2014)).

To show pretext in an employer's investigation, "evidence of an improper investigation does not establish a discriminatory motive." *Medlock v. Ace Cash Express, Inc.*, 589 F. App'x 707, 710 (5th Cir. 2014) (per curiam) (citation omitted). "The real issue is whether the employer believed the [accuser's] allegation and acted on it in good faith, or . . . instead used it as a pretext for an otherwise discriminatory dismissal." *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993)).

There is a genuine dispute of material fact as to whether "[Defendant] believed the allegation in good faith and . . . the decision to discharge [Plaintiff] was based on that belief." *Id.* at 1165–66. Plaintiff uses the email discussed above in his attempt to show pretext. Doc. 41, Pl.'s Reply, 19. That, alone, is insufficient to demonstrate pretext, because this evidence was used to establish Plaintiff's prima facie case—and after the employer "show[s] a legitimate, non-discriminatory reason, the presumption of discrimination disappears . . . ." *Wittmer*, 304 F. Supp. 3d at 633 (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 736–37 (S.D. Tex. 2014)). However, Plaintiff does have more: Detective Green's deposition.

Lively testified that one of the reasons he decided to recommend termination to the DRC was because information he obtained from Detective Green contradicted that of Plaintiff. Doc. 34, Def.'s Br., 23. Moreover, Defendant states that "Lively unequivocally testified he believed Detective Green over [Plaintiff] and made his termination recommendation on that basis." *Id.* Lively testified that "Detective Green . . . was very adamant that [Plaintiff] told him that [Plaintiff] was not at the Kroger . . . [H]e was also adamant that he felt like there had been inappropriate behavior that had gone on."

Doc. 37-1, Def.'s App., 168, Lively Dep., 73: 10–16. However, as Plaintiff points out, Detective Green tells a different story of his interaction with Lively:

> Q: Okay. And you didn't tell them [Lively] that you had drawn any conclusions about [Plaintiff's behavior] before—during your conversation with the employer, did you?
>
> A: Yeah, I don't—I didn't draw any conclusions on [Plaintiff]. I don't—I don't know the man. I just had a phone conversation with him.

Doc. 42, Pl.'s App., 8, Green Dep., 33:4–10. Green repeats this characterization of his conversation with Lively later in the deposition:

> Q: And did he have any specific questions for you?
>
> A: Not that I recall. He may have asked something like, did any—was anybody hurt, or something of that nature. But I don't recall specifics.
>
> Q: And how did you respond to that question?
>
> A: I said no.
>
> Q: Okay. So you gave him a general overview, implied that nobody was hurt, and you offered no opinion as to guilt or innocence, correct?
>
> A: That's correct.

*Id.* at 11, Green Dep. 46: 3–12. Thus, Green's testimony is in conflict with that of Lively's, as it suggests that their conversation was not as detailed and specific as Lively might suggest. This, combined with Davis's email that Lively interpreted as asking to use the investigation to fire Plaintiff—could show that Lively was hearing what he wanted to hear. This is enough to create a genuine dispute of material fact on whether Defendant's investigation was pretextual. A reasonable juror could conclude that Lively followed Davis's directive—thus showing bad faith and pretext.

Lively, then, could have been unduly prejudiced in making his conclusions—conclusions which the DRC adopted. *See* Doc. 34, Def.'s Br., 9–10.

Defendant's arguments that there is no genuine dispute of material fact on pretext fail.

First, Defendant points out that later in his deposition, Detective Green states "that while he does not have [a] specific recollection of speaking with Lively, he is sure it is true that he did and he has no reason to doubt Lively's notes of the conversation." Doc. 43, Def.'s Reply, 11 (citing Doc. 37-1, Def.'s App., Green Dep. 51:21–25). However, this inconsistency within Detective Green's own testimony is more of a reason for the jury to decide which of the parties' stories to believe.

Next, Defendant argues that "Davis was not on the DRC and had no role in [Plaintiff's] termination decision." Doc. 43, Def.'s Reply, 17. Defendant states that Davis's email is "[a]t best, . . . a stray remark insufficient to demonstrate pretext." *Id.* (citing *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 458 (5th Cir. 2019)). But even the Fifth Circuit in *McMichael* explained that the plaintiff there "d[id] not need to connect [an alleged discriminatory] statement to the 'formal decision maker,'" just to a person who "is 'in a position to influence the decision." *McMichael*, 934 F.3d at 459 (citation omitted). And as already explained, Davis potentially had influence over Lively, who was part of the DRC and whose recommendations were adopted by the DRC.

In sum, there is a genuine dispute of material fact as to whether Plaintiff has shown pretext. For this reason and because there is also a genuine dispute of material fact as to whether Plaintiff has met his burden in demonstrating his prima facie case, Defendant's motion for summary judgment on Plaintiff's gender discrimination claim is **DENIED**.

*B.     Age Discrimination*

Plaintiff, who was sixty-nine years old at the time of his firing, claims that "[h]e was replaced by someone who was forty-four years old, which falls within the 'substantially younger' category." Doc. 41, Pl.'s Resp., 18–19. He explains that he was a member of a three-person team in Controls, which included Boyce Cotton and Davis Briether. *Id.* at 15. Plaintiff states that Cotton told him that a forty-four year old named Demetrius had replaced Plaintiff, and Cotton asked Plaintiff if he could train Demetrius. *Id.* Plaintiff's only evidence for this allegation is his own affidavit. *See id.* (Citing Doc. 42, Pl.'s App., 1–4, Eaves Aff.). It is in his affidavit in which Plaintiff explains that Cotton told him about Demetrius. *See* Doc. 42, Pl.'s App., 3, Eaves Aff.

Hearsay is an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)–(2). Plaintiff is using the statement from Cotton, an out-of-court declarant, for the truth of the matter asserted—that Plaintiff was replaced by someone younger. Thus, Cotton's statement is hearsay. However, "[n]either the district court nor [the Fifth Circuit] may properly consider hearsay evidence in affidavits . . . ." *Snapt Inc. v. Ellipse Commc'ns., Inc.*, 430 F. App'x 346, 352 (5th Cir. 2011) (per curiam) (citation omitted). Thus, Cotton's statement is not proper summary-judgment evidence.

Because this is the only evidence Plaintiff submits for his age discrimination claim, Plaintiff does not have any competent summary-judgment evidence that someone younger than him—or anyone at all—replaced him at his previous job. Thus, Plaintiff has not stated a prima facie case for age discrimination. *See Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) ("To establish a prima facie case of age discrimination based on circumstantial evidence, 'a plaintiff must show that

. . . (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'") (citations omitted).

Therefore, Defendant's motion for summary judgment on Plaintiff's age discrimination claim is **GRANTED** and that claim is hereby **DISMISSED**.

## IV.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 33) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion is **DENIED** with respect to Plaintiff's gender discrimination claim but is **GRANTED** with respect to Plaintiff's age discrimination claim. Plaintiff's age discrimination claim is hereby **DISMISSED**.

**SO ORDERED.**

**SIGNED: July 13, 2020.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE